BLIZZARD BROS., Appellants, v. GROWERS' CANNING COMPANY, and YOUNKERMAN SEED COMPANY.

**Sales:** WARRANTY.  Where a dealer sells seeds by the package with the printed statement thereon that the same are sold without warranty, either express or implied, and it is shown that by general custom such sales are made without warranty as to quality or character, a warranty that the seeds sold were true to name will not be inferred.

**Same:** BREACH OF CONTRACT: LIABILITY.  Where a canning company agreed to purchase of plaintiff the products grown by them and to furnish the seed at its own cost, it was required to furnish such seed as would produce a product suitable for its purposes; and upon failure to furnish the proper kind of seed it was liable to plaintiff in damages, irrespective of the care used in procuring the same.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

WEDNESDAY, JULY 5, 1911.

ACTION for damages resulted in the dismissal of plaintiff's petition, from which it appeals.—*Affirmed* in part. *Reversed* in part.

*J. J. Stewart,* for appellant.

*J. J. Hess,* for appellee Growers' Canning Co.

*Kimball & Peterson,* for appellee Younkerman Seed Co.

LADD, J.—Blizzard Bros., a copartnership, entered into a written contract with the Growers' Canning Company "to plant and properly cultivate three acres of pumpkins, all

of which he agrees to deliver to the factory of said company in good condition for canning purposes, during the cropping season of 1908; the seed to be furnished to said growers by said company at cost. All pumpkins are to be ripe and sound, and fair size, for which said company agrees to pay $4 per ton." They called on the company for seed, but this was out, and its general manager inquired by telephone of the Younkerman Seed Company if it had the large cheese pumpkin seed, and, being informed that it had, said he would send a man up to get a pound of such seed. At his instance Blizzard Bros. then went to the seed company's place of business and inquired if a package of large cheese pumpkin seed was there for them. A clerk of the seed company responded in the affirmative, and handed them a pound package on which was written "Large cheese pumpkin seed." Some question is raised whether the purchase was by the manager individually, or by him for the company. It is enough to say, without reviewing the evidence, that he was merely acting for the company, and regardless of book entries, the sale was to the latter. Blizzard Bros. planted the seed on the three acres of ground, properly cultivated it, but the crop proved to be Connecticut pie pumpkins, with a few squash. These being unfit for canning purposes, the canning company refused to receive them, and plaintiff realized therefrom but $29.75. Had the seed been true to name, the several witnesses estimated that from sixteen to twenty-five tons of pumpkins per acre would have been produced, and plaintiff demanded judgment against the canning company for what they would have realized from the crop, had the seed been true to name, less the proceeds of the crop actually raised. The seed company was made a party defendant on motion of the canning company, and the latter answered, denying liability, and in a cross-petition alleged the fault, if any, to be that of the seed company, and prayed for such judgment against it as might be entered against the cross-peti-

tioner.   The seed company in its answer, among other things, pleaded that it was the general custom of dealers in seeds to sell with disclaimer of warranty as to quality, or whether true to name, and that on all packages were customarily printed the following: "Warranty.   While we exercise great care to have all seeds pure and reliable and true to name, our seeds are sold without any warranty, express or implied, and without any responsibility in respect to the crop.   If our seeds are not accepted on these terms, they must be returned at once."   'Jury was waived, and on trial the petition and cross-petition were dismissed.

The alleged liability of the Younkerman Seed Company may be considered first.   The evidence that a general custom, such as pleaded, prevails in the seed trade was conclusive.   The particular package had the printed matter thereon, and, though this may not have been noticed, the sale is presumed to have been negotiated with reference to the general custom of the trade.   *Rindskoff v. Barrett,* 14 Iowa, 101; *Beatty v. Gregory,* 17 Iowa, 109; *Thayer v. Coal Company,* 121 Iowa, 121.   This being so, a warranty that the seed was true to name could not be inferred, and the court rightly found in favor of the Younkerman Seed Company.

1. SALES: warranty.

A different question arises on the claim against the Growers' Canning Company.   It undertook in its contract with plaintiff to furnish the seed.   What kind of seed? The kind is not expressly stated in the contract, but, as the pumpkins to be raised therefrom were to be suitable for canning purposes, the clear implication is that the seed furnished should be such as would produce that kind of pumpkin. No other inference is possible.   Had the company furnished such seed and plaintiffs failed to perform their part of the contract, the company's right to maintain an action for the breach could not well be questioned.   Is the

2. SAME: breach of contract: liability.

plaintiff's right any less clear upon the company's breach in not furnishing the kind of seed it was bound to? The proposition seems too clear for argument. Possibly, as argued, the canning company exercised due care in procuring the seed, but this in no manner excused it from performing its contract. It was of no concern of plaintiff where or how the company procured the seed, and its obligation in this respect must not be confused with that of the seed company. The suggestion that plaintiff, rather than the canning company, procured the seed is without support in the record, as appears from the facts stated. To render the company liable, it is enough that it agreed to furnish seed from which plaintiff would raise pumpkins suitable for canning purposes, and that it failed to do so, in that the seed was not of the kind from which such pumpkins would grow. Elaboration could hardly make this plainer. As to the measure of damages in such a case, see *Wolcott v. Mount*, 36 N. J. Law, 262 (13 Am. Rep. 438); *Passinger v. Thorburn*, 34 N. Y. 634 (90 Am. Dec. 753); *Swift v. Redhead*, 147 Iowa, 94, and cases cited.

The judgment in favor of the Younkerman Seed Company is *affirmed*, and that for the Growers' Canning Company is *reversed*.