[No. 11439.  Department Two.  April 8, 1914.]

SEATTLE SEED COMPANY, *Respondent*, v. A. FUJIMORI *et al.*,
*Appellants.*

A. FUJIMORI, *Appellant*, v. SEATTLE SEED COMPANY,
*Respondent.*[1]

SALES—COLLATERAL AGREEMENT—CONDITIONS—REFUSAL TO WARRANT. Where, on October 27, a seed company orally agreed to furnish Alaska early pea seed, and on November 8, the parties came together and entered into written contract for the sale of 7,150 lbs. of peas, containing the terms of sale, but without mentioning the kind or quality, the writing must be taken as the contract of sale; especially where, in each sack was placed a card, stating that the seed company gives no warranty express or implied as to description or quality, and requiring a return of the seed if not accepted on that condition, and it appears that it was the general custom in the seed trade to make all sales subject to such condition; hence the sale was made without warranty or condition that the seed was true to name, and none could be inferred.

Appeals from judgments of the superior court for King county, Gilliam, J., entered March 11, 1913, upon findings favorable to a seed company, in consolidated actions, one, to recover the price of seed sold, and one for damages on account of the sale.  Affirmed.

*Walter A. Keene*, for appellants.

*Byers & Byers*, for respondent.

[1]Reported in 139 Pac. 866.

MORRIS, J.—Appellant A. Fujimori brought an action on behalf of himself and his assignors against respondent, to recover damages for failure of respondent to furnish him and his associates a certain variety of garden pea seed, known as the Alaska, or Early Alaska. Shortly thereafter, respondent brought an action to recover upon a promissory note, given to respondent by appellant and certain of his assignors for the purchase price of this and other seeds purchased at the same time. The cases were consolidated for trial below, and were so treated here. The findings in each case were for the seed company.

Appellant's case is based upon his claim that he purchased Alaska pea seed; that, instead of receiving that variety, he was furnished with an inferior variety which he was unable to market, and thus lost his crop, for the value of which he sues; while the respondent contends that the seed was sold subject to the following condition:

"The Seattle Seed Company gives no warranty, express or implied, as to description, quality, productiveness, or any other matter of any seeds they send out, and they will not, in any way, be responsible for the crop. If the purchaser does not accept the goods on these terms, they are at once to be returned. The acceptance of seeds under these conditions shall constitute your consent to the purchase."

There is but little, if any, dispute as to the material facts in the case. Fujimori, who conducted the negotiations on behalf of himself and associates, testified that, on October 27, 1911, he went to respondent's place of business and asked for pea seed; "I asked for telephone, gradis, and Early Alaska peas, and he said, 'All right, I give you.' Then I come back home and ask him some time—I don't remember exactly but I go up two or three times after that, and he and I have agreements and he sent me shipments Early Alaska peas, he say. I asked for Early Alaska peas, gradis, and telephone. He said, 'All right, I give you sure Early Alaska peas.' I told him what I wanted to do with them.

We want some peas that commence early so we want Early Alaska peas. He says, 'All right, I send you Early Alaska peas.' " The manager of respondent, who conducted the negotiations with Fujimori, testifies that the peas he sold were the genuine Alaska peas. He produced the persons from whom he purchased the seed, who testified that they raised Alaska peas for seed and sold their crop to respondent, and that the peas so raised and sold were the genuine Alaska pea.

In this connection, it might be added that the Alaska pea is an inferior pea in quality, but is valuable as a table pea because of the fact that it matures two weeks or more before other varieties in this climate, and thus gives the producer the benefit of the early market and good prices. The peas purchased by appellant produced a good crop, but did not mature until the later and better qualities were on the market, and no sale could be had. There is, also, testimony to the effect that the quality of the crop was poor and unsalable; also, that the season was late, and that the acreage supplying the local market was much greater than usual, so that all grades of peas, both early and late, ripened about the same time and the market became demoralized. On November 8, by an agreement between the parties, a meeting was held in the office of the attorney for respondent, and the promissory note in suit was then drawn up and executed, and at the same time an agreement was entered into, the material parts of which are here set forth:

"This agreement entered into this 8th day of November, 1911, by and between the Seattle Seed Company, party of the first part, and John B. Godwin, party of the second part, and The Japanese United Farmers of Bellevue and G. Hattori, H. Aramaki, A. Fujimori and Y. Ikala, party of the third part, Witnesseth: That the said party of the first part hereby agrees to furnish to the said parties of the third part seven thousand one hundred and fifty (7150) pounds of peas, to be paid for according to the terms and

conditions of one certain promissory note of even date herewith."

The peas were delivered November 22, and in each sack the lower court has found was a card written in bold faced type containing the written condition as to absence of warranty as set forth in respondent's answer. Much of the briefs is taken up with an argument as to whether the peas were sold under a contract, as evidenced by the conversation on October 27, or under the written agreement of November 8. Neither of these agreements is complete. The only thing spoken of on October 27 was Alaska peas; but how many, at what price, or upon what terms the sale was made, is not disclosed. While in the agreement of November 8, the quantity sold and the terms of sale are provided for, but no reference is made to the kind or quality. Reference of this kind, however, is not necessary to make the contract a complete and binding agreement. It is a complete contract for the sale of 7,150 pounds of peas at a fixed price and time of payment; and while ordinarily it would seem that such a contract would mention the kind or character of the article sold where there are many known varieties, yet the law does not stand *in loco parentis* and set aside or refuse to hold parties to written agreements because the written agreement was silent as to some feature or features it should have contained. On the whole, therefore, we are inclined to believe that the writing of November 8 must be accepted as the contract of sale. Assuming it to be the law that a written contract does not preclude proof of a collateral or prior agreement concerning the same matter upon which the written contract is silent, and which does not contradict or vary the writing, the only matter that could be added to this writing of November 8 would be "Alaska or Early Alaska peas," and we will still have the sale and delivery made subject to the printed condition contained in the seed bags, which the court below has found to be a condition of the sale. There is, also, in this record, evidence that a general

custom prevails in the seed trade of making all sales subject to the conditions named on the printed slips. This, coupled with the evidence that the printed slips were placed in each bag of seed, is sufficient to support the finding that the sale was made without warranty or condition, and warranty or condition that the seed was true to name could not be inferred. *Blizzard Bros. v. Growers' Canning Co.*, 152 Iowa 257, 132 N. W. 66; *Leonard Seed Co. v. Crary Canning Co.*, 147 Wis. 166, 132 N. W. 902, Ann. Cas. 1912 D. 1077, 37 L. R. A. (N. S.) 79. In each of these cases, as in the one before us, there was no evidence that the purchaser read the printed matter denying any express or implied warranty similar to the language on the printed slips in this case, but the court in each instance held the purchaser was bound.

Appellant contends that this case is similar to that of *Springfield Shingle Co. v. Edgecomb Mill Co.*, 52 Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 258, where it was held that, in a sale of shingles as Star A Star, a description well known to the shingle trade, there was an implied contract that the shingles were of this description, in which case many seed cases were cited, to the effect that in a sale of seed there was an implied warranty that the seed was true to name. That case, however, cannot be read as authority for reversing this judgment, because we were not there dealing with either custom or express refusal to warrant condition, quality, or character, either in the case itself or in those cited in its support.

The judgments are affirmed.

CROW, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.