[No. 20309. Department Two. April 25, 1927.]

ERICK LARSON, *Appellant,* v. INLAND SEED COMPANY
*et al., Respondents.*[1]

[1] SALES (3-1, 100)—WARRANTY—DISTINGUISHED FROM OTHER TRANSACTIONS—AGENCY. Where a seed company, being unable to furnish spring rye, undertook to ascertain whether it could be obtained from a certain party, and thereafter informed the purchaser that it could, and upon request, ordered it shipped, the seed company is not liable for breach of implied warranty, where the seed turned out to be fall rye, resulting in a loss of the crop; and it is immaterial that the purchaser sent the seed company a check in payment for the rye so procured.

[2] SAME (106)—IMPLIED WARRANTY—EXCLUSION BY REFUSAL TO WARRANT. Where a dealer in seeds, in response to an order for fall rye, shipped spring rye, with printed tag attached reciting that it gives no warranty, express or implied, as to the description or any other matter of the seeds, it is not liable for breach of warranty, or damages resulting from the failure of the crop.

[3] SAME (106)—IMPLIED WARRANTY—EXCLUSION BY DISCLAIMERS. Where fall rye was shipped in response to an order for spring rye, with tags attached giving notice that the shipper did not warrant the description or quality of the seed, and the shipment was accepted, it cannot be claimed that the seller's disclaimer of warranty was brought to the buyer's attention too late.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered May 13, 1926, upon

[1]Reported in 255 Pac. 919.

findings in favor of the defendants, in an action for breach of warranty, tried to the court. Affirmed.

*Dan Danielson, Fred M. Williams,* and *Lucius G. Nash,* for appellant.

*Danson, Lowe & Danson* and *Pedigo & Watson,* for respondents.

·PARKER, J.—By this action the plaintiff, Larson, a farmer of Loon Lake, seeks recovery of damages alleged to have been suffered by him as the result of the defendants, Inland Seed Company, a corporation, of Spokane, and the Garden City Feed Mills, a copartnership of Walla Walla, shipping or causing to be shipped to him a quantity of seed fall rye in their assumed compliance with his purchase of seed spring rye, which fall rye so shipped to him was sown upon his farm in the spring of 1925, believing it to be spring rye, resulting in a practical total failure of crop. The seed company and the feed mills answered separately. The case proceeded to trial in the superior court for Spokane county sitting without a jury. At the conclusion of the evidence introduced by Larson, the seed company and the feed mills separately challenged the sufficiency of the evidence to support any recovery by Larson and moved for judgment denying to him any recovery. The trial court granted both of these motions and rendered judgment of dismissal accordingly. From this disposition of the case in the superior court, Larson has appealed to this court.

The theory upon which recovery is sought against the seed company seems to be that Larson made the contract of purchase with the seed company, which contract, it is claimed, contained an implied warranty that the rye would be spring rye, though it was to be delivered direct to Larson by the feed mills, upon order

of the seed company, without passing through the possession of the seed company. The theory upon which recovery is sought against the feed mills seems to be either that they were, in legal effect, joint vendors with the seed company and as such became bound by the claimed implied warranty in the purchase contract that the rye would be spring rye, or that the feed mills were, in any event, liable to Larson in damages because of their negligence in shipping to him fall rye instead of spring rye.

The theory upon which the trial court disposed of the case, as evidenced by observation made in announcing its decision upon the motions, is, in substance, that the seed company was, in legal effect, only the agent of Larson in ordering the spring rye from the feed mills, and that the evidence fails to show that there was any failure of that duty on the part of the seed company; and that the feed mills were absolved from liability by the disclaimer of warranty plainly evidenced by their printed tags attached to each bag of rye shipped to Larson, which printed disclaimer of warranty he saw upon receiving the rye.

We are here called upon to determine whether or not the evidence introduced in behalf of Larson calls for a judgment denying him any recovery, keeping in mind that the trial was by the court and not by a jury. As to the controlling facts, our problem is largely one of interpretation of Larson's testimony touching the purchase contract and not one of conflict of evidence touching that subject. Larson is a farmer, residing upon his farm near Loon Lake, some distance north of Spokane, his principal trading place evidently being Spokane. The seed company of Spokane and the feed mills of Walla Walla each are, and for a number of years past have been, dealers in farm crop seeds. About

April 1, 1925, Larson, desiring fifteen hundred pounds of seed spring rye for sowing and raising a crop of rye during that year upon approximately thirty-five acres of his farm, visited the seed company's place of business with a view of purchasing such seed rye. He was there informed by Mr. Ellis, representing the seed company, that it did not have on hand any spring rye. As to what then and thereafter occurred, claimed by Larson as constituting a sale contract by the seed company with him, he testified as follows:

"Q. What did you do with reference to getting rye seed in 1925? A. Well, I tried a few seed companies in Spokane and they were all sold out, and I was up to the Inland Seed, and they said they were all sold. I said to the man there that I heard somebody down at Walla Walla had some spring rye, so I told them that and they said they knew the man and they would order it if I wanted them to and I said 'Yes.' And he said he would write and find out of them if they had the spring rye and he would let me know. And three or four days afterwards I got a letter from the Inland Seed that they had spring rye. I told them in the first place if they had it to find out what the price was and write to me; and they said that they had it and they wanted four dollars a hundred and I wrote back and told them to order 1500 pounds and send it. Q. Mr. Larson, you mean that was a letter between you and the Inland Seed Company? A. Yes, sir. . . . Mr. Ellis was the man and he wrote to me and I wrote back the same letter to order 1500 pounds, and send it to . . . Loon Lake, . . . Q. Whom did you send that letter to? A. To the Inland Seed. I was out in the field and a boy from town brought the letter to me in the field and we put it right on the same letter and told him to order 1500 pounds.''

These written communications between Larson and the seed company were not produced in evidence, Larson being unable to produce them evidently because his answer was endorsed on the letter he received from the

seed company, which was sent back to the seed company. However, no objection was made to Larson's testifying to the contents of these two communications, which were the only written communications or written evidence of any sale contract. Later, manifestly in response to a communication from the seed company, the feed mills shipped direct to Larson at Loon Lake railway station fifteen hundred pounds of seed rye, which Larson received, assuming it to be spring rye and coming to him from the feed mills in pursuance of an order from the seed company, as contemplated by the oral and written communications passing between the seed company and Larson as above noticed. Larson paid the railway freight charges upon the shipment, amounting to $12.16, and soon thereafter, on April 28, 1925, sent to the seed company his check for sixty dollars, the amount of the purchase price of the rye. Larson has no remembrance of having at any time received any invoice or bill for the rye, and we think the record warrants the assumption that he did not. He was fully advised of the amount he owed as the purchase price without any invoice or bill, and apparently the prompt sending of his check and the probable transmission of it or its proceeds by the seed company to the feed mills account for his not receiving any invoice or bill. Larson never received any communication whatever from the feed mills, except the rye and attached to each bag thereof a tag upon one side of which there was in writing and print the following:

"To Erick Larson, Loon Lake, Wash. From Garden City Feed Mills, Walla Walla, Wash."

and upon the other side of which there was in plain print the following:

"Garden City Feed Mills gives no warranty, express or implied, as to description, quality, productiveness or

any other matter, of any seeds it sends out, and will be in no way responsible for the crop.''

These tags were so attached to the bags that the bags could not be opened without removal of them. Larson admittedly saw the writing and printing upon both sides of these tags. It is evident that the words ''somebody down at Walla Walla'' and ''they knew the man and they would order it if I wanted them to,'' as testified to by Larson in his above quoted testimony, were understood by both Larson and Mr. Ellis of the seed company to have reference to the Garden City Feed Mills of Walla Walla, though at that time Larson did not know the name of the Walla Walla person or firm they were talking about. Whatever the technical nature of the contract between the seed company and Larson may be, it in any event is plain that it was intended and clearly understood that, whatever shipment of rye was to be made to Larson, was to be made direct by the feed mills from Walla Walla to Larson at Loon Lake railway station. Soon after the receiving of the rye, Larson sowed it upon approximately thirty-five acres of his farm, and upon its coming up and acquiring a few inches in height, its then condition plainly evidenced that it was fall rye and not spring rye. For that reason it did not mature or produce a crop of any substantial value, which it presumably would have done had it been spring rye.

[1] As to the claimed liability of the seed company to Larson, it seems to us that the agreement or contract, if it is desired to so characterize the understanding arrived at between Larson and the seed company by that more strict legal term, we think, imposed upon the seed company no other or greater duty than to order for Larson from the feed mills fifteen hundred pounds of spring rye, with directions to ship the rye direct to

him at Loon Lake; in other words, it seems to us that there did not accompany that agreement any guaranty, express or implied, on the part of the seed company, that the feed mills would ship spring rye to Larson. This, we think, is rendered fairly plain by the fact that Larson well understood that the rye was to be furnished and shipped to him by the feed mills without the seed company having anything further to do with the furn-ishing of the rye. It is not claimed, as we understand counsel for Larson, that the seed company did not plainly direct the feed mills to furnish and ship spring rye to Larson. It is true that Larson, after receiving the rye, sent his check to the seed company for an amount equal to the purchase price, but that does not change the agreement between Larson and the seed company so as to impose upon it any other duty than to send the check or its proceeds to the feed mills or return it to Larson. It seems, therefore, though of no consequence here, that the sending of the check by Larson to the seed company has ultimately resulted in the feed mills being paid for the rye. If the seed company had taken no steps looking to the shipping of the rye to Larson, it seems to us that Larson could not have recovered from the seed company in damages upon the ground of breach of a sale contract made by the seed company with him. We conclude that the evidence introduced upon the trial in behalf of Larson does not show any right of recovery against the seed company.

[2] Considering now the claimed liability of the feed mills to Larson, we shall look upon them as the vendors selling the rye to Larson, which is the logical result of what we have said touching the claimed liability of the seed company to Larson, and the most unfavorable position in which the feed mills can be placed with reference to their liability to Larson. The

feed mills are in the position of receiving an order for the spring rye from Larson through the seed company. We have seen that, in response to such order, the feed mills, without communication from or to Larson, shipped to him the fifteen hundred pounds of rye, as directed by the seed company, except that the shipped rye later proved to be fall rye, and that Larson accepted the rye, at the same time seeing the feed mills' disclaimer of warranty attached to each bag, the disclaimer being as to "warranty, express or implied, as to description" as well as to quality, the latter being of no moment in this inquiry. Our decision in *Seattle Seed Co. v. Fujimori*, 79 Wash. 123, 139 Pac. 866, seems to us practically decisive that Larson so received the rye, under the circumstances here appearing, as to absolve the feed mills from liability as to description or kind as well as to quality. That case was an action to recover the purchase price of seed peas sold by the plaintiff to the defendant. There was a written contract for the sale of "7,150 pounds of peas," they not being otherwise described in the writing. There was, however, oral evidence that the peas would be "early Alaska peas." Another kind of peas was delivered by the plaintiff in assumed compliance with the contract, which delivered peas seemingly were as different from early Alaska peas, though not differing in appearance, substantially as fall rye differs from spring rye. In holding that a disclaimer of "warranty, express or implied, as to description," as well as to quality, printed upon a card and attached to or placed in each bag by the vendor, absolved it from liability as to description or kind, as well as to quality, Judge Morris, speaking for the court, said:

"Assuming it to be the law that a written contract does not preclude proof of a collateral or prior agree-

ment concerning the same matter upon which the
written contract is silent, and which does not contradict
or vary the writing, the only matter that could be added
to this writing of November 8 would be 'Alaska or
Early Alaska peas,' and we will still have the sale and
delivery made subject to the printed condition con-
tained in the seed bags, which the court below has found
to be a condition of the sale. There is, also, in this
record, evidence that a general custom prevails in the
seed trade of making all sales subject to the conditions
named on the printed slips. This, coupled with the evi-
dence that the printed slips were placed in each bag
of seed, is sufficient to support the finding that the
sale was made without warranty or condition, and war-
ranty or condition that the seed was true to name could
not be inferred. *Blizzard Bros. v. Growers' Canning
Co.*, 152 Iowa 257, 132 N. W. 66; *Leonard Seed Co. v.
Crary Canning Co.*, 147 Wis. 166, 132 N. W. 902, Ann.
Cas. 1912D 1077, 37 L. R. A. (N. S.) 79. In each of
these cases, as in the one before us, there was no evi-
dence that the purchaser read the printed matter de-
nying any express or implied warranty similar to the
language on the printed slips in this case, but the
court in each instance held the purchaser was bound.

"Appellant contends that this case is similar to that
of *Springfield Shingle Co. v. Edgecomb Mill Co.*, 52
Wash. 620, 101 Pac. 233, 35 L. R. A. (N. S.) 258, where
it was held that, in a sale of shingles as Star A. Star, a
description well known to the shingle trade, there was
an implied contract that the shingles were of this
description, in which case many seed cases were cited,
to the effect that in a sale of seed there was an implied
warranty that the seed was true to name. That case,
however, cannot be read as authority for reversing this
judgment, because we were not there dealing with
either custom or express refusal to warrant condition,
quality, or character, either in the case itself or in
those cited in its support."

Let us notice a little further the holdings of the Iowa
and Wisconsin courts cited in this quotation. In *Bliz-
zard Bros. v. Growers' Canning Co.*, 152 Iowa 257, 132

N. W. 66, there was drawn in question the furnishing of pumpkin seed, in assumed compliance with a contract for the furnishing of quite a different kind of pumpkin seed, and a disclaimer of warranty as to kind as well as quality, in substance, the same as involved in this case. In holding that such disclaimer relieved the vendor of liability as to description and kind as well as to quality, Justice Ladd, speaking for the court, said:

"The alleged liability of the Younkerman Seed Company may be considered first. The evidence that a general custom, such as pleaded, prevails in the seed trade was conclusive. The particular package had the printed matter thereon, and, though this may not have been noticed, the sale is presumed to have been negotiated with reference to the general custom of the trade. *Rindskoff v. Barrett*, 14 Iowa, 101; *Beatty v. Gregory*, 17 Iowa, 109, 85 Am. Dec. 546; *Thayer v. Coal Company*, 121 Iowa, 121, 96 N. W. 718. This being so, a warranty that the seed was true to name could not be inferred, and the court rightly found in favor of the Younkerman Seed Company."

We do not overlook the proof of custom mentioned in that decision and in our own decision, which is not in this case; but we have here the actual seeing by Larson of the disclaimer of warranty, at the time he accepted the rye. In *Leonard Seed Co. v. Crary Canning Co.*, 147 Wis. 166, 132 N. W. 902, Ann. Cas. 1912D 1077, 37 L. R. A. (N. S.) 79, there was drawn in question the furnishing of peas in assumed compliance with a contract for the furnishing of another quite different kind, and a disclaimer of warranty by the seed company as to description as well as to quality. Holding that such disclaimer absolved the seed company from liability as to description as well as to quality, Justice Barnes, speaking for the court, said:

"The peas to be delivered under the contract were described therein as 'Advancer' peas. But the contract provided that no warranty, express or implied, was given that the peas furnished should be of the description named therein. If a dealer in seed peas can exempt itself from liability for selling bad, wormy, or dead peas to a grower, no good reason is apparent why it cannot go further and say that it will not be responsible in the event of an intermixture of other peas with the variety agreed to be furnished. Neither of the parties here are under guardianship or incompetent to contract. There is no claim that the contract signed was not the one agreed upon, or that both parties did not fully understand what they were agreeing to. Plaintiff plainly undertook to relieve itself from liability in case of intermixture, and defendant agreed that it should be relieved. It is not claimed that the contract is void, because contrary to public law or to public policy, and, if not, effect should be given to it. The vendee might reject and refuse to receive the peas if they were not 'Advancer' peas, or it might well be that in the event of the shipment being made in bad faith, and with the purpose and intention of committing fraud upon the vendee, an action for damages for the fraud would lie; but we have no such case before us. If it be conceded that the contract is one-sided, it must also be conceded that the parties had a right to make a one-sided contract if they saw fit."

It is of interest to note that the Wisconsin court in that decision suggests the probability of a vendor being rendered liable for damages, regardless of such disclaimer of warranty, both as to kind and quality, where such vendor is proven guilty of bad faith in furnishing seed or other property so sold by him not true to description according to the sale contract. There is no evidence in this case pointing to any such dereliction of duty on the part of the feed mills in furnishing and shipping the rye to Larson.

[3]  Some contention is made in behalf of Larson rested upon the theory that the disclaimer of warranty was by the feed mills brought to his attention too late; that is, after the making of his contract for the purchase of the spring rye, invoking the law as announced in *Edgar v. Breck & Sons Corporation*, 172 Mass. 581, 52 N. E. 1083; *Moorhead v. Minneapolis Seed Co.*, 139 Minn. 11, 165 N. W. 484; *Ward v. Valker*, 44 N. D. 598, 176 N. W. 129, and *Davis v. Ferguson Seed Farms*, 255 S. W. (Tex. Civ. App.) 655; holding, in substance, that a disclaimer of warranty made after the making of a sale contract, complete in itself, will not avail the vendor to relieve him from warranties, express or implied, embodied therein. Our decision in *Seattle Seed Co. v. Fujimori*, 79 Wash. 123, 139 Pac. 866, in view of its particular facts, we think, is not out of harmony with this view. However that may be, Larson finally simultaneously acquiesced in the sale contract between him and the feed mills, and in the manner of its performance, when he received the shipment of the rye at Loon Lake. That was, it seems to us, under the circumstances here shown, the ultimate making of the sale contract. Attention has been called to our decision in *Jolly v. Blackwell & Co.*, 122 Wash. 620, 211 Pac. 748, where there was drawn in question a disclaimer of warranty, not as to description or kind, but only as to quality; it being a printed disclaimer of warranty put in each sack of seed by the seed company which put up the seed in the sacks for sale, and which company was not a party to the action, nor was it the seller of the seed to the plaintiff. Holding that such disclaimer of warranty could not avail the defendant company, the actual vendor of the seed, it having made no disclaimer of warranty, Judge Holcomb, speaking for the court, said:

"Had respondent itself placed such disclaimer, or notice of non-warranty, on and in the bags, as was placed thereon and therein by the Spokane Seed Company, from whom it bought, there might be no question but that appellants must have taken the grain without any warranty that it would prove true to name. But appellants did not purchase from, or contract with, the Spokane Seed Company. They saw the label which said the rye was seed rye for spring. The seed was not defective in any respect except that it was fall rye instead of spring rye, and would not produce a crop when sown in the spring. This the appellants were unable to discover by an inspection. No disclaimer was made by respondent. The only disclaimer shown in the case is made by a stranger to the contract and to the suit."

That decision, we think, is of no controlling force in this case. We conclude that the feed mills, under the circumstances here appearing, have not been shown to be legally liable to Larson.

The judgment is affirmed.

MACKINTOSH, C. J., TOLMAN, and ASKREN, JJ., concur.