[No. 25335.   Department Two.   March 7, 1935.]

LEO MARKS *et al., Appellants,* v. MIKE KUCICH *et al.,*
*Respondents.*

MIKE KUCICH, *Respondent,* v. LEO MARKS *et al.,*
*Appellants.*[1]

[1]Reported in 42 P. (2d) 16.

*John T. McCutcheon,* for appellants.

*Clifford M. Langhorne,* for respondents.

HOLCOMB, J.—These two cases were consolidated in the court below for the purposes of trial. Appellants first began an action against respondents for damages for the loss of some eight hundred small chicks in the sum of, eight hundred dollars, and for the return and cancellation of a note for one hundred dollars which had been given them as part of the purchase price of the chicks. Respondents thereupon began an action in replevin for the recovery of fifteen hundred of the chicks which had grown into pullets, alleged to remain in the possession of appellants at the time the action was begun. After some preliminary law issues had been disposed of, upon motion in the court below, the two causes were consolidated for trial.

Upon the trial of the consolidated cases with a jury, a verdict was returned in favor of appellants for two hundred fifty dollars. Respondents, at the close of all of the evidence, had challenged the sufficiency of the evidence to sustain appellants' cause of action and cross-complaint, and after the verdict of the jury moved for a judgment notwithstanding the verdict, or in the alternative for a new trial.

The trial court granted the judgment n. o. v., and entered judgment in favor of respondents for the return of 661 pullets or, in the event they could not be redelivered, the sum of five hundred dollars as the value thereof, fifty dollars attorney's fees and costs. A new trial was also granted in case of the reversal of the judgment n. o. v.

The trial court submitted the case to the jury upon the theory that, if there was a latent defect in the chicks, known to respondents and unknown to appellants, and undisclosed by respondents to appellants,

that the law implies a warranty of the fitness of the property sold for the use intended, regardless of the fact that the contract existing between the parties provided that no warranty or representations were made by the seller unless specifically set out in the contract; and that all risks of loss were on the buyers, the latter by the terms of their own contract representing themselves to be experienced buyers and raisers of the kind and character of the chicks sold, and affirming that they had a full, fair and unrestricted opportunity to examine the chicks prior to delivery.

On or about June 19, 1933, the parties hereto entered into a conditional sales contract for the sale and purchase of 2,200 two weeks old chicks, in which respondents were the sellers and appellants the purchasers. One hundred dollars was paid down by appellants at the time of the execution of the contract, which provided that the remainder due under the contract of one hundred dollars should be paid on or before September 19, 1933, and which was represented by a promissory note.

The following provisions of the contract are pertinent:

"Title to said property and all accessions thereto, including increase, and each and every part thereof shall remain and be in seller until buyer shall have paid the full purchase price hereunder and duly performed all the terms and conditions of this agreement; Provided, however, that buyer may sell cockerels as hereinafter set out and thereby vest title thereto in his vendee. . . .

"All risks of loss of, injury to or from and/or damage to or from said property, of every kind and character, shall be upon buyer and the occurrence of such loss, injury and/or damage shall in no manner relieve buyer of his obligations under this agreement by failure of consideration or otherwise. . . .

"Time and the performance of each and every term

and condition of this agreement by buyer are of the essence hereof and, upon buyer's failure to make any of the payments herein provided and/or upon his breach of any of the covenants and conditions and/or in event of an assignment by buyer for the benefit of creditors and/or the voluntary or involuntary adjudication of buyer as bankrupt, seller or assigns may, at their option: (a) Declare this agreement forfeited and terminated and thereupon personally or by agents enter upon the premises where the property is kept or stored and re-take possession thereof without notice and with or without process of law; in which event seller or assigns shall retain all payments theretofore made by buyer as liquidated damages, and buyer's rights to and under this agreement shall immediately cease and terminate; or (b) Declare the whole balance of the purchase price due and collectable. . . .

"No warranty and/or representation not contained herein has been made by seller as an inducement to buyer to purchase the property sold hereunder and/or enter this agreement and no provision of this agreement may be waived or altered without the written consent of seller or assigns. . . .

"Buyer hereby affirms that he is an experienced and skillful buyer and raiser of the kind, character and age of the chicks sold hereunder and that he will tend and feed the chicks hereby sold with the highest degree of care compatible with the practical operation of the poultry raising business. Buyer further affirms that he has had a full, fair and unrestricted opportunity to examine said chicks prior to the date of this contract and that he is now and will be upon delivery of said chicks a resident of the county of Pierce, State of Washington."

Before the contract was executed, but after the parties had agreed upon the terms of the sale, on about June 19, 1933, respondents had delivered to appellants approximately eight hundred of the chicks contracted for.

It is undisputed that, between the dates of the first and second deliveries, both respondents and appellants

treated the chicks for a cold, which in chickens is synonymous with the term "roup." It is also uncontradicted that appellants knew that sneezing was prevalent at night among the chicks constituting the second delivery, at the time the note and contract were signed. Appellants contended they treated the young chicks for roup almost continuously up to the time they instituted the action for damages against respondents.

Appellants testified that there were 1,202 pullets in the flock and 998 cockerels, and that they sold 735 of the cockerels, sustaining a loss of 263 cockerels. They admitted that, at the time of the trial, they were possessed of 661 producing pullets, ten months old.

Respondents have made demands for the payment of the bill due them on account of this purchase or for the return of the chicks sold, which appellants refused. The chicks had reached the age where they commanded the highest price on the market, when they instituted their action for damages for the loss of the eight hundred chicks.

Both appellants testified to treating the chickens for cold between June 13 and June 21, 1933, when the second delivery was made. They also stated that respondent, the husband, had told them that the chickens had a cold when he brought the chickens to them, but said that it was a very ordinary thing, which they found out later was not true. They also stated that they did not know of the existence of the cold among the chicks constituting the second delivery until after the execution of the conditional sale contract, and until they had an opportunity to observe them during the night time. It is clear from the evidence that appellants were informed of and knew of the existence of cold among the chicks constituting both deliveries.

On appeal, appellants assign that the court erred in setting aside the verdict of the jury on the ground

of insufficiency of the evidence and in not entering judgment for them on their cross-complaint and counter-claim; or second, that, in any event, the court erred in entering judgment for the replevin of 661 pullets or in the alternative for five hundred dollars as their value, plus attorney's fees and costs.

The contract above set out largely makes the law in this case. It was deliberately entered into, and there is no claim of any fraud or deceit inducing it. *Shell Oil Co. v. Wright,* 167 Wash. 197, 9 P. (2d) 106.

Appellants represented themselves in the contract as experienced and skillful buyers and raisers of the kind, character and age of chicks sold, and declared that they had a full, fair and unrestricted opportunity to examine the chicks prior to the date of the contract.

By the contract, the sellers positively and expressly refused to give any warranty, in which case no warranty of any kind can be implied by law; and this is not repugnant to, nor avoided by, the provisions of the uniform sales act relative to implication of warranty. 55 C. J. 729.

Our uniform sales act, now codified as Rem. Rev. Stat., § 5836-1 [P. C. § 6227-1], *et seq.,* is, so far as material, as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: . . .

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed." Rem. Rev. Stat., § 5836-15 [P. C. § 6227-15].

It further prescribes:

"Variation of implied obligations. Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or

varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale." Rem. Rev. Stat., § 5836-71 [P. C. § 6227-71].

Those provisions are plain, unambiguous, and speak for themselves.

■ Although there is a tendency under the uniform sales act to somewhat enlarge the common law rule of implied warranty as an exception to the maxim of *caveat emptor (Larson v. Farmers Warehouse Co.*, 161 Wash. 640, 297 Pac. 753), it cannot avail appellants here in the face of their positive contract. This is the effect of our decisions in *Seattle Seed Co. v. Fujimori*, 79 Wash. 123, 139 Pac. 866; *Jolly v. Blackwell & Co.*, 122 Wash. 620, 211 Pac. 748; *Larson v. Inland Seed Co.*, 143 Wash. 557, 255 Pac. 919, 62 A. L. R. 444. ·

The general rule is stated in 55 C. J. 701, to be:

"A buyer may protect himself against a specified defect by taking a special warranty although the defect is visible. It is purely a matter of the intention of the parties whether a special warranty exists. . . .

"Where the seller specifically makes known to, or calls the attention of, the buyer before the sale to certain particular defects in the property, the property is, to the extent of the information thus disclosed, not warranted; and particularly where the purchaser expressly disclaims all purpose of holding the seller responsible for such a defect. A defect so declared is covered only by a special warranty against it."

Under our cases and the above texts, it is plain that appellants had no legal right to recover against respondents upon the contract in suit. That part of the case should have been withdrawn from consideration of the jury upon the challenge of respondents at the conclusion of the evidence.

■ There was, however, a question of fact to be determined by the jury, since a jury had been de-

manded and granted, which was as to the value of the 661 pullets admitted to be in possession of appellants at the time of the trial. The allowance of five hundred dollars as the value thereof, in case of not redelivering the pullets, which amounted to about seventy-five cents each, was less than the value placed thereon by respondents. However, the jury would not have been required to accept such interested testimony as to such value. Although appellants had placed a higher value on the same chickens in their cross-complaint and counterclaim, that question, being in dispute, should have been submitted to the jury.

The contract specifically provides that title should remain in respondents until the chickens were entirely paid for, that all risks of loss or injury or damage to any or all of the property should be upon the buyer, and upon failure to make any of the payments provided therein, the sellers might declare the contract forfeited and retake possession of the property without notice and with or without process of law, etc.

Under the contract, respondents had the right to replevin the property, and in case it could not be returned, for the actual value of such property as could not be returned, at the time of trial.

The judgment n. o. v. is therefore reversed, and the order granting a new trial is affirmed.

The case is remanded solely for the purpose of determining the value of the 661 pullets which could not be redelivered to respondents at that time, which was the time respondent's right to retake the 661 pullets became definite and certain.

Appellants, having recovered a more favorable judgment, are entitled to costs of appeal.

MILLARD, C. J., STEINERT, BEALS, and BLAKE, JJ., concur.