ROUNDY & McMURRAY COMPANY, Appellee, v. NICHOLSON PRODUCE COMPANY, Appellant.

**Sales:** WRITTEN CONTRACT: CONSTRUCTION.   A written agreement signed
1   by the parties in which the first party agreed to sell to the second party all of his make of butter of the standard grade for a certain period, but if not of that grade the price to be adjusted, was a binding agreement of sale and not merely a proposition, even though containing no express agreement of the second party to pay.

**Same.**   The foregoing contract, especially in view of the correspondence
2   and acts of the parties thereunder, was an obligation of the buyer to take the entire product during the period named, and he was not relieved from liability for loss on butter sold on the open market at the buyer's direction.

**Same:** IMPLIED WARRANTY: SPECIAL VERDICT.   Where a contract for the
3   sale of butter for a specified time provided that it should be of the seller's standard grade there was no implied warranty that it should be salable in any particular market, although it might have been understood by the parties that it was to be shipped and sold on such market; and a special finding of the jury that all the butter shipped under the contract was of the agreed standard is binding upon the appellate court.

**Same:** PLEADINGS: COUNTERCLAIM.   Where action was brought for a
4   balance due on a certain shipment of butter under a contract to

purchase the seller's entire output for a fixed period, and defendant claimed full payment and that the butter was of inferior quality but made no issue as to the quantity received, the defendant's pleading did not present a counterclaim for shortage in quantity of previous shipments which had been paid for.

**Same:** ACTION UPON CONTRACT: EVIDENCE. Plaintiff's right of action for defendant's refusal to accept the butter rested upon the contract and its performance, and not upon any estoppel; and evidence that plaintiff was to additional expense in performing the contract was inadmissible.

**Same.** Where defendant contracted to purchase butter of plaintiff of the standard grade, it was not competent for defendant to show what he understood was the grade contemplated by the contract.

**Same.** Evidence of the grade and value of the butter produced by plaintiff in certain markets was competent, on the question of whether the butter in controversy conformed to the standard fixed by the contract.

*Appeal from Crawford District Court.*—HON. M. E. HUTCHISON, Judge.

THURSDAY, MAY 14, 1914.

ACTION for balance due on a contract to furnish butter to be sold in the market, and for damages for loss sustained in being compelled to sell below the contract price. From a verdict and judgment for plaintiff, the defendant appeals.— *Reversed.*

*Sims & Kuehnle,* for appellant.

*Reed & Robertson* and *Harding & Kahler,* for appellees.

WITHROW, J.—I. Plaintiff's suit is based upon a contract entered into between the parties on or about April 1, 1910, which is as follows:

This agreement made and entered into this 1st day of April, 1910, by and between Roundy & McMurray Company

of Woodbine, Iowa, and Nicholson Produce Company of Denison, Iowa. The first party have this day agreed to sell to second party all of their make of butter from May 1, 1910, until March 1, 1911, at a price one cent a pound less than New York market for extras the day of shipment f. o. b. Woodbine, Iowa. Should the first party at any time fail to make their butter of their standard grades, a difference in price shall be adjusted satisfactory to both parties. [Signed] Roundy & McMurray Co., H. J. McMurray. [Signed] Nicholson Produce Co., G. W. Nicholson, Pres.

They claim that, under said contract, they shipped butter to the defendant up to about January 18, 1911, and at such time, upon written notice from the defendant, directed them to ship the butter to other parties for the best price obtainable, and that it would pay for any loss sustained on March 1, 1911; that they did so, and sent to the Eastern markets 12,233 pounds of their standard grade of butter, receiving therefor $510.23 less than the contract price as agreed upon between the parties. They further claim that on or about October 24, 1910, they shipped to the defendant under their contract 1,576¾ pounds of butter, the price under the contract being 29½ cents per pound, and of the total value of $457.75; that defendant paid on said shipment $267.53, leaving a balance due of $190.22. Judgment was asked for the sum of the two items stated.

For its answer the defendant admitted signing the paper set out as a contract, and that butter was shipped to it, and also to the Eastern markets. It denied that the shipments on sales are correctly given, and denies any indebtedness, and averred that whatever amounts were due the plaintiff had been fully paid. It further averred that, if any loss occurred on account of shipments to the east, it was because plaintiffs shipped an inferior grade and quality of butter. It also pleaded a counterclaim, alleging that the butter sold and shipped to it was to be of standard grade and best quality, but that it was inferior, and because of such defendant suffered a loss of five cents per pound, or a total damage of $5,000.

The reply to the counterclaim avers that, with full knowledge of the weights and quality of the butter, the defendant voluntarily paid the drafts drawn for the various shipments, and that the defendant thereby waived all right to dispute the weight or quality, and was barred and estopped from so doing, and from recovering back any part of the purchase price. They further pleaded that, in reliance upon the contract, they purchased cream with which to manufacture butter of the character contemplated, and incurred additional expenses, which they would not have done but for the conduct of the defendant in accepting the butter without objections, and making voluntary payment therefor, and that it is therefore barred and estopped from asserting its counterclaim.

The cause was tried to a jury. In its instructions the trial court held, as a matter of law, that plaintiffs were entitled to recover $190.22 on account of the balance due on the shipment of October 24, 1910, and submitted to the jury the question of liability on the balance of plaintiffs' claim, and also under the counterclaim of the defendant.

By its verdict the jury found plaintiff entitled to recover $750.94, and by special findings allowed defendant nothing on its counterclaim, and found that the shipments of butter made by the plaintiff to the defendant up to January 18, 1911, were of its standard make and grades when delivered f. o. b. at Woodbine for the defendant. From the judgment entered on the verdict, the defendant appeals.

II. The errors assigned relate to the refusal to give requested instructions to the admission and rejection of evidence, and to the giving of certain instructions.

The third and fourth instructions asked by the defendant, and which were refused, were based upon the claim that the paper sued upon as a contract was no more than a written proposition, and that the defendant could not be held liable for any butter not delivered direct by the plaintiffs to the defendant, and that it had at any time the right to refuse to take

1. SALES : written contract : construction.

any of plaintiffs' butter, without incurring liability because of such refusal. Also that, unless the defendant in some manner manifested an intention to take the entire product of butter for the period named in the written proposition, it would be bound only for that which was actually delivered to it, corresponding in quantity and quality with that contemplated by the written proposition.

The conclusion of the proposition stated in the refused instructions depends largely upon the construction of the paper sued upon as a contract. If it was, as claimed by the appellee, a contract binding the appellant to take all of its output from May 1, 1910, to March 1, 1911, of the grade therein required, then the offered instructions were properly refused; and this regardless of other elements in the instructions which appellee urges were not proper to be included in the charge to the jury.

The claim of the appellant is that by its terms the paper is no more than a proposition. It recites that it is an agreement entered into between the parties, under which the first party agreed to sell to the second party all of their make of butter within the dates given, fixing the price to be determined by the New York market, and provides that it should be of the standard grade of the first party. If not of that grade, the price was to be adjusted. The written agreement is silent in terms as to an express promise to pay; but it would be a forced and unreasonable construction to now hold, as claimed by appellant, that it was only a proposition. When signed by both parties, and shipments and settlements were made under it, by such acts it presumptively became the written evidence of the respective rights and duties of the parties and of the agreement under which they were acting and by the terms of which they were bound. *Des Moines V. R. R. Co. v. Graff*, 27 Iowa, 99; *Cross v. Snakenberg,* 126 Iowa, 636.

III. While counsel for appellant does not seriously challenge the right to consider the instrument as a contract, it is

urged that under it the defendant could only be bound to pay for the butter actually received by it, provided it was of the required quality, and that, when it refused in January, 1911, to take any more butter under it, because that which was furnished was not salable in the Eastern markets, that it was not bound by the contract for further shipments.

2. SAME.

It appears in the record that on January 18, 1911, the appellant wrote to Roundy & McMurray that it was impossible to find a market for butter cubes at that time; that it had to reship the butter as fast as it was received, and directed the appellees to "ship the butter on the market, and if we have to stand the loss on it we will do so the 1st of March; hence from this on do not ship us any more butter; ship it to the market, whichever you think best, and take what it sells for, and then you can find out how your butter grades." The same letter stated that the markets reported the butter received from the appellee as a poor grade of seconds, and "not like the butter you made last season." In reply to this letter the appellant was advised that under advice of their attorney the appellees would ship the butter on the market, keep account of the loss, and file claim for any loss on March 1st, as per the letter of appellant.

There was evidence tending to show that the butter which was to be furnished under the contracts was intended for the Eastern markets, and the contention of the appellant is that there was an implied warranty that it should be suitable for such market. Reference to the contract, however, discloses that it is unambiguous in its provision as to quality, which was to be of "their standard grades," referring to the Roundy & McMurray Company, and this must be taken as the basis of duty and liability. While it may have been the understanding that the butter was to be shipped and sold in the Eastern markets, the contract referred to that market only as fixing a basis for the price to be received by the appellee, and did not require the

3. SAME: implied warranty: special verdict.

butter to meet any particular standard of that market as to its quality. The principle governing in such cases is given in *White v. Adams*, 77 Iowa, 297: "Where an article of a certain and definite nature is to be manufactured to order, the seller, of course, can in no sense be considered as warranting it to be appropriate to the use to which the buyer intends to apply it, but only to be as fit as any similar article complying with the order can reasonably be expected to be."

This was the construction placed upon the contract by the trial court, and in answer to a special interrogatory the jury found that all the butter furnished by the appellee up to January 18, 1911, was of its standard make and grade; and this finding must necessarily be conclusive on this appeal as to the quality of all shipments made up to that time.

The correspondence between the parties, a portion of which we have quoted, clearly indicates that both regarded it as an obligation extending to March 1, 1911, and we think no other construction can properly be placed upon it. The appellant sought to be relieved from it, and, failing in this desire, adopted the means shown in the quotations above given from its letters. The contention of the appellant that it had the right to terminate the contract, and that it could not be held liable for losses in shipments to others by its direction, cannot be upheld.

IV. In the eighth and seventeenth instructions given by the trial court the jury was told that the plaintiff was entitled to recover the sum of $190.22, being the amount withheld by the appellant in payment for the last shipment made to it, and being the amount alleged to have been overpaid on previous shipments because of short weights. There was offered in evidence by the appellant a statement or account of weights of different shipments from June 15 to October 20, 1910, as said to have been kept by it, showing short weights in the aggregate amounting to $190.22 at the contract price of the shipments. Upon objection it was not admitted. The question raised as

4. SAME: pleadings: counterclaim.

to the criticized instructions and by the rejected evidence is in effect the same. The evidence shows that the various shipments which were made to the appellant were paid for by it, usually by honoring drafts accompanying the shipment, and that each shipment was thus separately settled for. No complaint appears to have been made as to short weights until in October, when the appellant took the position that there was nothing in the contract which allowed the Roundy & McMurray Company to draw full value on their weights, but that they would pay on the weights found ''when the butter comes into our place,'' and, in paying for the shipment of October 24th, the appellant deducted the amount claimed to have been paid in excess on previous shipments. We think a sufficient answer to the objection now made is that the suit of plaintiff was, as to this branch of the case, only for a balance claimed to be due on the last shipment. It did not purport to cover the entire period of their relations under the contract, but, in effect, treated each sale as a separate transaction. While this would not necessarily be conclusive as to the rights of the parties under issues properly framed, yet to enlarge the scope of the inquiry a plea of an affirmative nature was necessary on the part of the defendant. The answer of the appellant, aside from the general plea of full payment, presents no issue as to the quantity received; the counterclaim recites that a certain number of pounds of butter were received, but that it was of inferior grade, and asked damages on that ground, and in it no averment is made as to shortage. We do not hold that there can be no recovery for a shortage, if there was such, but that, under the issues in this case, the criticized instructions and ruling of the trial court were correct.

V. Mr. McMurray, one of the plaintiffs, was asked and, over the objections of the defendant, was permitted to answer that they incurred expense in paying added prices for cream in order to comply with the contract, and this

5. SAME: action upon contract: evidence.

is alleged as error. On the part of the appellee it is claimed that the evidence was competent in support of its plea of estoppel, but we think that

such does not meet the objection raised.  The additional expense which it claimed to have incurred was in purchasing cream to manufacture butter under its contract.  The price to be paid for the butter was fixed, and it was the duty of the appellant to furnish it of the standard required at whatever cost.  Suing on the contract, recovery must necessarily be based upon a compliance with its terms; and an estoppel could not arise from doing that which was required to be done.  We think in admitting this evidence there was error.

VI.  B. Y. Nicholson, manager of the defendant company, was asked what he understood was the grade of the butter contemplated by the contract.  Upon objection, he was not permitted to answer, and this is assigned as error.

6.  SAME.

The position taken by the appellant is that there was no butter known to the trade as standard grade, that the contract was silent as to the grade of butter recognized by the trade, and that it therefore was competent to show what the purchaser understood it was to receive.  The questions were not directed to that which was expressly stated in the contract as to the quality to be furnished, which was the standard grade of the appellee, but sought proof of what might be an entirely different quality.  The contract being free from ambiguity as to that matter, it was not competent to show what would be market grade as distinguished from the standard grade of the maker.  There was no error in the ruling.

VII.  The depositions of several witnesses were taken on the part of the defendant, by which it was sought to prove the grade and market value in Eastern markets of butter shown to have been furnished by the Roundy & McMurray Company prior to January 18, 1911, under its contract with the appellant.  The trial court held such evidence to be inadmissible, and of this ruling complaint is made.  Issue was raised as to the quality of the butter which was furnished under the contract.  While it fixed the standard by which the appellant was bound, upon an issue as to whether that standard had been met, we think

7.  SAME.

that proof of inspection and tests, and of the market price of that butter in the market to which it was shipped, as compared with other grades of butter, extra or standard, in the light of evidence introduced by the plaintiff as to its quality and value, was competent as bearing upon the question of the quality of that which was furnished. We think this evidence should have been admitted.

For the errors pointed out, the judgment is—*Reversed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.