FRUIT DISPATCH COMPANY, Appellee, v. C. C. TAFT COMPANY, Appellant.

**SALES: Warranties—Known Unsound Article.** A warranty of reason-
able fitness will not be implied in favor of a person who, without opportunity to inspect, but without any fraud's being practiced upon him, knowingly buys an unsound article at an unsound price, and on the understanding that no claim would be made on account of the condition of the article.

**SALES: Fraud—Quoting Price.** The mere naming by the owner of a
price at which he is willing to sell, and does sell, does not constitute a fraudulent misrepresentation in case the value of the article proves to be less than the price named.

*Appeal from Polk District Court.*—J. D. WALLINGFORD, Judge.

MARCH 4, 1924.

ACTION for the contract price of a carload of bananas. Defendant alleged fraudulent representations as to the condition

and value of the fruit, and the breach of an implied warranty. From a judgment on a directed verdict for plaintiff, defendant appeals.—*Affirmed.*

*W. C. Strock,* for appellant.

*Sargent, Gamble & Read,* for appellee.

VERMILION, J.—The plaintiff sued to recover the contract price of a carload of bananas. The defense was, in substance, that the bananas were purchased by telephone, of plaintiff's agent in Burlington, to be shipped from New Orleans to Des Moines; that defendant had never seen the bananas; that they were in the possession of the plaintiff at New Orleans, and plaintiff had knowledge of their quality and condition and that defendant was so purchasing them for shipment to and resale at Des Moines; that it was falsely and fraudulently represented by · plaintiff that they were reasonably worth $4.80 per hundred weight at New Orleans, for the purpose of being so shipped, and that their condition was such that, if properly handled, they would be in a merchantable and marketable condition on arrival; and that there was an implied warranty to that effect; that said bananas were not up to the value so represented and warranted, and on their arrival at Des Moines were in such condition that the greater portion was unsalable. Defendant offered to pay the net amount it received for the bananas after deducting freight and the cost of handling them, and also presented a counterclaim for the difference between the amount sued for and the amount so offered.

1. SALES: warranties: known unsound article.

Upon a trial to a jury, the court, at the close of all the evidence, on motion of plaintiff, directed a verdict in favor of plaintiff for the amount claimed.

The plaintiff is engaged in the business of importing and selling tropical fruits, especially bananas, and the defendant is a wholesale dealer in fruits at Des Moines. It appears without dispute that, in December, 1919, the defendant ordered of the agent of the plaintiff located at Burlington, a carload of Guatemala, first-class nine-hand bananas, at $5.00 per hundred weight

at seaboard; that, on the following day, the agent, by telephone, notified defendant's president that the order could not be filled, —that the cargo had been revalued,—to which the president replied, in substance, that that would be all right,—to let it come,—he could use a car of bananas, ripe. Thereafter, on the following day, as we understand the record, defendant received a telegram from plaintiff's agent, giving the date of shipment, car number, and weight, and reading further as follows:

"345 stems revalued Guatemala * * * price reduced to $4.80 with understanding that no claims will be entertained."

Defendant received also a letter, reading in part as follows:

"We beg to acknowledge the receipt of your telephone order for one car Guatemala FC9 hand revalued bananas shipped from New Orleans, La., on Dec. 10, 1919. In consideration of the Fruit Dispatch Company reducing the price of such bananas to $4.80 per cwt. delivered at seaboard because they are not up to the usual standard it is distinctly understood and agreed that no claim whatever on account of said bananas shall be made against the Fruit Dispatch Company."

The defendant understood that, in the banana trade, the term "condition" had reference to the ripeness of the fruit, while "quality" referred to the size and grade; and that the only basis of revaluing was on account of condition; that a revalued car was not up to what was known as "standard" condition; and that a revalued cargo was riper than the standard cargo. The defendant's president testified that he understood that the terms which the plaintiff would make on the shipment in question were that no claims would be made against the plaintiff on account of the condition of the car, and that with that understanding he permitted the car to come on and be delivered to the defendant at Des Moines.

There was testimony to the effect that, on their arrival at Des Moines, the bananas were overripe and decayed, and in a condition that indicated that they had started to ripen on seaboard, or at the time of shipment, so that they would not carry through to Des Moines and arrive in a marketable condition. It was stipulated by the parties that the handling of the car en route had nothing to do with the issues involved, and that the car was carried to destination in usual time.

There is no evidence whatever of any fraudulent represen-
tation as to the condition of the fruit, or any representation as
to its value.  The utmost that could be claimed is that plaintiff
2. SALES: fraud:      notified defendant that it could not fill the order
   quoting price.     for first-class bananas; that the bananas it had
for shipment had been revalued,—by which the defendant un-
derstood that the fruit was not first-class or standard, and that
the defect and the reason for the revaluation related wholly to its
condition of ripeness.  The defendant's claim upon this branch
of the case is that plaintiff knew the condition of the fruit, and
also knew that the defendant was buying it for shipment to and
resale at Des Moines and was ignorant of its condition, and that,
by putting a price of $4.80 per hundred pounds upon the fruit,
it represented that that was its value.  The cases cited by appel-
lant have to do with positive, false assertions of the value of
lands, coupled in many instances with equally positive misrepre-
sentations of quality, condition, or the like, and made under
such circumstances as to warrant the conclusion that they were
made for the fraudulent purpose of deceiving a purchaser ignor-
ant of the truth, by having him rely upon them as statements of
fact.  Obviously, no such situation exists here, where a dealer
merely bought at the price asked, which he knew to be less than
the market price for the standard article, a perishable commodity
in which he habitually dealt, fully understanding that what he
was buying was not in first-class condition, and had, in some
degree, the very defect of which he now complains.  There is a
very plain distinction between a misrepresentation of the value
of a thing as a statement of fact, or even of the price theretofore
asked for it, and the offering of it for sale at a given price.  It
has been held by some courts that a misrepresentation by a
broker of the price his principal is willing to accept is actionable.
See, however, *Bosley v. Monahan,* 137 Iowa 650, to the contrary.
But we have been cited to no case, nor are we aware of any,
holding that the mere naming by the owner of a price at which
he is willing to and does sell, is a fraudulent misrepresentation
of the value of the thing sold.  See 26 Corpus Juris 1228.

It may be conceded, as claimed by appellant, that the state-
ments in the telegram and letter above set out, to the effect that
no claim should be made against appellee on account of the con-

dition of the bananas, would not protect it from the consequences, if the sale was procured by fraud. *Phelps v. James,* 79 Iowa 262; *Bridger v. Goldsmith,* 143 N. Y. 424 (38 N. E. 458). But they are both material and important upon the consideration of the claim of an implied warranty that the bananas were in such condition that they were worth the price charged, and could be shipped to Des Moines in marketable condition. ''A warranty will not be implied in conflict with the express terms of the contract.'' *Blackmore v. Fairbanks, M. & Co.,* 79 Iowa 282; *Bucy v. Pitts Agric. Works,* 89 Iowa 464; *Burnett v. Hensley,* 118 Iowa 575; *Blizzard Bros. v. Growers' Canning Co.,* 152 Iowa 257; *Round & McMurray Co. v. Nicholson Produce Co.,* 166 Iowa 39; *Seattle Seed Co. v. Fujimore,* 79 Wash. 123 (139 Pac. 866); *Ross v. Northrup, K. & Co.,* 156 Wis. 327 (144 N. W. 1124); *Leonard Seed Co. v. Crary Canning Co.,* 147 Wis. 166 (132 N. W. 902).

The defendant bought the bananas knowing that they were from a revalued cargo,—that is, that they were ripening at the point of shipment, and were not standard or first-class; they were purchased at a reduced price on that account; by telegram and letter, before they were received, defendant was advised that they were sold with the understanding that no claim would be made on account of their condition; they were received and accepted by the defendant with that understanding. The law will imply no warranty of value or quality under such circumstances, and in direct conflict with the terms of the contract of sale.

Moreover, it is generally held that there is no implied warranty that perishable property will continue sound for any definite time, or for any period of time. *Rhynas v. Keck,* 179 Iowa 422; *Rinelli v. Rubino,* 68 Ind. App. 314 (120 N. E. 388), and cases there cited.

Appellant relies upon authority announcing the familiar doctrine that, in the sale of personal property for a specified purpose of which the seller has knowledge, where the buyer has no opportunity to inspect the property, there is an implied warranty that it is reasonably fit for the use intended. But, as we have seen, no warranty will be implied in conflict with the terms of the contract. Further, the sale was of an article expressly understood not to be first-class or sound, and not at a sound

price. Nor, under such circumstances, does Paragraph 1 of Section 15 of Chapter 396 of the Acts of the Thirty-eighth General Assembly, known as the Uniform Sales Act, apply. It is as follows:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

The appellant cannot be held to have relied on the seller's skill and judgment, where it knowingly bought an unsound article at an unsound price, and admittedly received the article upon the understanding that no claim would be made on account of its condition.

Appellant relies strongly on the case of *Southern Produce Co. v. Oteri*, 94 Ark. 318 (126 S. W. 1065). That case applies the general principle of implied warranty to a sale of bananas. It appears to have been the purchase in the ordinary course of business of a supposedly sound article at the market price, and is easily distinguishable, on the grounds we have indicated, from the present case.

The action of the court in directing a verdict for plaintiff was right, and the case is—*Affirmed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.