## HOOVER v. UTAH NURSERY CO.

No. 5005.  Decided January 25, 1932.  (7 P. [2d] 270.)

*Robinson & Robinson,* of Provo, for appellant.

*Allen T. Sanford,* of Salt Lake City, for respondent.

BRAMEL, District Judge.

This is an action for damages brought by a purchaser of seed against the seller. From a judgment for defendant, plaintiff appeals. The plaintiff was engaged in farming in Utah county, Utah, and the defendant was engaged in the nursery and seed business in Salt Lake City, Salt Lake county, Utah. In the early spring of 1928, plaintiff asked defendant for a half pound of "Utah Chinese Celery" seed. Defendant thereupon delivered to plaintiff a package of seed that looked like celery seed, and plaintiff paid for the same. That spring the plaintiff planted two acres of a ten-acre farm with the seed so purchased, and irrigated and cultivated the same along with other crops on other parts of said farm. Some time in the late summer of the same year plaintiff discovered that the crop on the two acres was "celeriac." In botanical structure, classification, and appearance, celeriac is a species of celery. It is very much like celery, but commercially speaking is not celery. The blossoms and the stalk structure of the two plants are of the same type, and the seeds are so much alike that it is extremely difficult to distinguish a celeriac seed from a celery seed. The root or bulb is the edible portion of the celeriac plant, and the stalks are the edible portion of the celery plant.

"Utah Chinese Celery," so called because it was developed by Chinese gardeners in Utah, has far greater marketability than celeriac. The market for celeriac is limited.

Concerning the transaction, the trial court, among other things, found as follows:

"3. That during the months of January, February and March, of the year 1928, the defendant advertised for sale in its catalogue what is known as Utah Chinese Celery seed, and that on or about the 15th day of March, 1928, the plaintiff went to the office of the defendant in Salt Lake City, Salt Lake County, State of Utah, in response to defendant's advertisements, and asked the defendant for one-half (½) pound of Utah Chinese Celery seed, which defendant had priced at Ten Dollars ($10.00) per pound. That in response to plaintiff's request, the defendant sold and delivered to the plaintiff what it understood to be one-half (½) pound of Utah Chinese Celery seed. That said seed at the time of the sale was put in a container by the defendant, which had printed thereon plainly and legibly the following:

" 'Utah Nursery Company uses all possible care and precaution to send out only seeds that are pure and reliable but gives no warranty, expressed or implied, as to the description, quality or productiveness or any other matter of any seeds they sell. If the purchaser does not accept them on these terms, they must return them at once and any money paid by them will be refunded.

" 'Utah Nursery Company.'

"4. That the plaintiff took said seed to her farm in Vineyard, Utah County, State of Utah, wholly relying upon the representations of the defendant that said seed was Utah Chinese Celery seed. Said seed was not Utah Chinese Celery seed, but was Celeriac seed.

"5. That there was a sufficient amount of said seed to plant two (2) acres of land, and that the plaintiff planted said seed upon two (2) acres of her said farm.

"6. That said seed was properly planted upon said ground and was carefully cared for by plaintiff during the spring and summer of 1928 at great expense and labor, but the evidence which was adduced by the plaintiff was not sufficiently definite to enable the court to ascertain the actual amount expended for labor, or the reasonable value of the labor applied to the planting, cultivation and irrigation of the Celeriac produced from said seed. The crop raised from planting the same was Celeriac which had a very limited market in Utah.

"7. It is impossible to ascertain from the evidence what the value of the crop would have been had the seed sold and planted been Utah Chinese Celery seed. The evidence showed that there was on or about the 13th day of November, 1928, a hard freeze which greatly damaged the celery crop and also the evidence as to the cost of harvesting and

marketing the celery was uncertain and indefinite and from the evidence, it is impossible to determine what, if any, profit would have been realized from the crop had the seed been celery seed. There was a very limited market for Celeriac in the State of Utah, but there was a possible opportunity of making connection for marketing the Celeriac out of the state.

"8. That at the time of the alleged sale it was, and for a long time had been the common and universal usage and custom of all persons engaged in the seed vending business at Salt Lake City, Utah, that the vendor of seeds does not by reason of such sale give or make any warranty, expressed or implied, as to the description, quality, productiveness, or any other matter, in respect to the seeds they sell, and the defendant sold said seeds pursuant to said general usage and custom."

Appellant in argument and brief attacks certain of the above findings of fact on the ground that they are not supported by the evidence, and challenges the judgment on the ground that it is contrary to law.

1. At this point this court is compelled to say that appellant's objections to the above-quoted paragraph No. 3 of the findings cannot be heard or considered because neither said paragraph nor any part of it is mentioned in appellant's assignment of errors. Rule 26 of this court, ■ which became effective November 1, 1905, provides that an appellant shall, within 15 days after filing transcript on appeal, prepare, sign, serve, and file in this court an assignment of the errors relied upon for reversal. During some twenty-five years last past this court has uniformly enforced this rule. Two early cases in which the importance of this rule, the reasons for its adoption, and the necessity for its enforcement are set forth, are *Smith Table Co.* v. *Madsen*, 30 Utah 297, 84 P. 885, and *Lyon* v. *Mauss*, 31 Utah 283, 87 P. 1014. Other cases in which this rule was enforced are *Baglin* v. *Earl-Eagle Mining Co. et al.*, 54 Utah 572, 184 P. 190; *Holt* v. *Great Eastern Casualty Co.*, 53 Utah 543, 173 P. 1168; *Perrin* v. *Union Pac. R. Co.*, 59 Utah 1, 201 P. 405; *Utah-Idaho Sugar Co.* v. *Salt Lake County*, 60 Utah 491, 210 P. 106, 27 A. L. R. 874; *Eagle Lumber Co.* v.

*Burton Lumber Co.*, 62 Utah 491, 220 P. 1069; *Ogden Savings & Trust Co.* v. *Blakely et al.*, 66 Utah 229, 241 P. 221; *Bouwhuis et al.* v. *Johnson,* 68 Utah 544, 251 P. 359; and many other cases. A very recent case in which this rule was enforced is *First National Bank of Ogden* v. *Smoot et al.,* 72 Utah 215, 269 P. 518.

2. Appellant contends that all the facts found by the trial court in finding No. 8 are unsupported by the evidence and insufficient to constitute a defense. It is ∎ admitted that the evidence shows that it was the custom of seed dealers in Salt Lake City not to warrant seeds sold by them, but it is contended that the evidence fails to show that the custom existed anywhere else in Utah.

The answer of defendant alleges that it was the common and universal custom of all persons engaged in the seed-vending business in Salt Lake City and in the state of Utah not to make any warranty, express or implied, as to seeds sold, etc., and that defendant sold said seeds pursuant to said custom.

At least four witnesses testified that the custom prevailed in Salt Lake City.

Two of these witnesses did not limit the custom to Salt Lake City. Mr. Quinn, manager of a wholesale and retail seed company, testified:

"Every seed dealer that I know of has the same rule and the custom is not limited to Utah, it is international."

Mr. Harrison, 49 years old, who has been in the seed business most of his life, testified:

"My experience is that no warranty is given in buying and selling seed. They are sold without warranty."

The evidence as to the existence and universality of the custom is undisputed. It is manifest that defendant proved the custom.

The fact that the disclaimer of warranty was printed on container, the fact that the nonwarranty custom was well

established in Salt Lake City, and the presence of undisputed evidence that the same custom prevailed generally, sustain the court in finding that the sale was made pursuant to that custom. Or, if the finding is called a conclusion of law, it finds ample support upon the facts found in paragraphs 3 and 8 of the findings.

The chief question in this case is a question of law. It may be conceded that, in the absence of a custom as to nonwarranty and in the absence of a disclaimer of warranty, a sale of seed by description or by name might imply a warranty that the seed were reasonably fit for the known purpose for which they were purchased and would imply a warranty that they were of the kind purchased. But here we have a case involving both custom not to warrant and a disclaimer of any warranty.

As shown by the cases, the so-called disclaimer of warranty which seed men variously print on containers, tags, and cards placed in the packets is a matter of importance in a transaction involving the sale of seed. The risks and dangers that threaten a crop between the planting and the harvesting are numerous. If the seed merchant could not protect himself by custom not to warrant or by a disclaimer of warranty, he would find it hard to survive the litigation that would come to his door. The purchase price of a parcel of seed is usually insignificant as compared with the value of the crop that may be raised therefrom. For this small price the seed merchant may feel that he cannot afford to warrant. Crops are destroyed or impaired by many causes, by cold, by heat, by drouth, by dampness, by insects, by blights and rusts, by soil deficiency, by improper husbandry, and by other causes hard to identify. The law, considering these larger facts and circumstances, gives validity to these disclaimers and to the custom when it exists. Of course, there are intimations in some of the cases to the effect that the farmer is the forgotten man in this argument. Such is not wholly the case. The rule deduced from this reasoning is fundamentally nothing more than a declaration to the effect that the seed merchant, in order to protect himself,

may by contract or notice or custom limit his liability to any extent he desires. It is far better in the long run that the seed merchant exist and use his knowledge and skill in providing agriculture with seeds, which in the main are of good grade and reliable notwithstanding occasional mistakes, than that the buyers of seed should be compelled to buy haphazard where they may.

Concerning the rule as above stated, the decisions, with very little, if any, dissent, are in accord.

Seed cases are numerous. No harmony among them is apparent unless they are properly classified. Many of these cases involve a situation in which the purchaser merely orders seed by name or description and no custom or notice of nonwarranty is present. The famous "rape seed case," *Hoffman* v. *Dixon,* 105 Wis. 315, 81 N. W. 491, 76 Am. St. Rep. 916, is of this type.

Many cases turn upon a question of fact as to whether a custom not to warrant did or did not exist or whether a notice of nonwarranty was or was not given. The case of *Bell* v. *Mills,* 68 App. Div. 531, 74 N. Y. S. 224, and also again in 78 App. Div. 42, 80 N. Y. S. 34, is of this type.

There is another class in which an express agreement or a special warranty overrides custom or notice of nonwarranty. *Coates et al.* v. *Harvey et al.* (Super. Buff.) 2 N. Y. S. 5, is of this type.

And finally, there are the cases where the custom or the notice of nonwarranty is brought to the notice of the purchaser and there is no express agreement to prevail against it. The case of *Kibbe* v. *Woodruff et al.,* 94 Conn. 443, 109 A. 169, in which the purchaser by written order upon which was printed a nonwarranty notice, purchased one kind of seed and received another kind, is typical of this class.

The question in this case is this: Upon the facts found, does the law imply a warranty that the seeds were Utah Chinese celery seeds?

A case somewhat like the case at bar is *Miller* v. *Germain Seed & Plant Co.,* 193 Cal. 62, 222 P. 817, 32 A. L. R. 1215. The facts in that case are as follows: Miller, a farmer liv-

ing and farming in San Diego county, Cal., by written letter sent by mail ordered celery seed of Golden Yellow California stock from the Germain Seed Company at Los Angeles, Los Angeles county, Cal. The seed company sent him by common carrier seed of green celery, which was a worthless variety. The grower suffered loss of a crop and sued the seed company. In the trial court the purchaser recovered a judgment, and defendant appealed. The defendant seed company contended that it placed in the packet of seed a card upon which was printed the same disclaimer of warranty as is involved in this case. This contention was denied by plaintiff, and the jury found against defendant upon this issue. The Supreme Court of California did not consider the effect of the card upon the contract because the finding of the jury that there was no card disposed of that issue. The question presented to the Supreme Court was whether or not the trial court had erred in refusing to instruct the jury to the effect that a long-established and general custom of seed merchants not to warrant seeds is presumed to have been taken into consideration by the parties making the contract of sale and is a part of the contract unless excluded by express agreement to the contrary. Five of the seven judges concurred in an opinion holding that the trial court erred in refusing that instruction. Two judges dissented from the prevailing opinion. The ground upon which the dissenting opinion is based seems to be that the written letter accepted as an order by the seller constituted a clear and complete contract that needed no interpretation. Or, to put it in the language of the dissenting opinion, there was a "written request and assent so clear and unambiguous as to leave no room for usage to interpret it."

The case of *Miller* v. *Germain Seed & Plant Co.*, supra, while not exactly in point here, is nevertheless a clear, able, and exhaustive discussion of the general principles involved in the case at bar, and is given space for that reason.

In the case at bar, the trial court found that at the time of the sale and for a long time prior thereto it had been

"the common and universal usage and custom of all persons engaged in the seed vending business at Salt Lake City" not to warrant seeds in any respect, and that the seeds in question were sold pursuant to said custom. The appellant contends that this finding declares that the custom is a local and not a general custom.

In addition to finding that there was in Salt Lake City a custom not to warrant, the trial court also found that the notice of disclaimer of warranty was "plainly and legibly" printed on the container. The containers used by defendant for parcels of this size were paper bags. One of these bags, said to be the kind used for packages of that amount of seed, was introduced in evidence. It is a light-colored paper bag. On the side in large black print is the notice of nonwarranty or so-called disclaimer of warranty. It is impossible to understand how anybody could look at such a package without seeing the notice. So also the catalogue from which plaintiff obtained information as to the seed states that, if the seed is not "true to name," it would be replaced or the purchase price would be refunded, and the seller would be liable for no greater amount.

Now a warranty is a contract either express or implied. In most instances it presents itself in the form of a term or stipulation, either express or implied in a contract of sale.

Our statutes (Uniform Sales Act) provide that, where there is a sale of goods by description, there is an implied warranty that the goods shall correspond with the description. Comp. Laws Utah 1917, § 5123. This same act further provides that, when any right, duty, or liability will arise under a sale by implication of law, it may be negatived or varied by express agreement or by course of dealing between the parties or by custom, if the custom be such as to bind both parties. Comp. Laws Utah 1917, § 5180.

The course of dealing in the case at bar was a single transaction in which the defendant for $5 sold to plaintiff a half-pound bag of seed which had the nonwarranty clause plainly printed upon it. From the reported decisions it

appears that these nonwarranty notices are widely used by seed merchants.

If the notice of nonwarranty is of any validity at all, it must be held to be a notice from the seller to the purchaser to the effect that the sale carried with it no warranty whatsoever. And from the fact that the so-called disclaimer was printed on the container or bag furnished by the seller in its place of business in the course of business it was also notice of custom, or at least a notice which would invite inquiry that would disclose the custom. Wade, Law of Notice (2d Ed.) par. 11.

A long-established general custom not to warrant seeds sold is held by the law to be a part of the contract in a sale of seed. The only reason given or that can be given for the existence of this rule of law is that the parties to the contract both know or are presumed to know the custom. The case against the implied warranty ought to be stronger when the purchaser is given a written notice that there is no warranty.

The decisions hold that these notices of nonwarranty constitute refusal to warrant and exclude implied warranties. *Kibbe* v. *Woodruff et al.*, 94 Conn. 443, 109 A. 169; *Larson* v. *Inland Seed Co. et al.*, 143 Wash. 557, 255 P. 919, 62 A. L. R. 444; *Leonard Seed Co.* v. *Crary Canning Co.*, 147 Wis. 166, 132 N. W. 902, 37 L. R. A. (N. S.) 79 Ann. Cas. 1912D, 1077; *Blizzard Bros.* v. *Growers' Canning Co. et al.*, 152 Iowa 257, 132 N. W. 66; *Seattle Seed Co.* v. *Fujimori et al.*, 79 Wash. 123, 139 P. 866; *Ross* v. *Northrup, King & Co.*, 156 Wis. 327, 144 N. W. 1124, 1125.

At this point arises the contention of appellant to the effect that the description of the seed ordered was a term or stipulation in the contract and that by delivering seed that were not of the kind ordered the vendor committed a breach of contract. It is urged that the difference between celery and celeriac is so great that this case cannot be classified as a seed case, and that, metaphorically speaking, this is a case where the vendor sold a horse and delivered an ox.

The same contention could be made in any seed case. Celeriac is a species of celery. It is so defined in the dictionaries. As above indicated, the law considers the circumstances surrounding the seed merchant. He deals in seeds of many kinds and varieties. He cannot always surely and certainly distinguish one variety from another. His task is not to distinguish between matured plants, but to distinguish between seeds that look alike. The degree of difference between the matured plants is not an element in this situation. The name, quality, and description of the seed are the very things he refused to warrant.

If the nonwarranty notice or the custom is valid at all, it covers the description of the seed, the quality, and any other matter. We hold the refusal to warrant valid. So held in *Leonard Seed Co.* v. *Crary Canning Co.*, supra, and other cases above cited.

The foregoing exceptions of appellant to the findings and the judgment cannot be sustained.

The other errors assigned to the effect that the trial court erred in finding that proof of damage was too uncertain to justify any findings as to amount of damage will not be considered because the other facts found dispose of the case and render the question of the amount of damage a moot issue.

The judgment appealed from is affirmed, and costs are awarded to respondent.

STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.

ELIAS HANSEN, J. (dissenting).

I am unable to agree with the conclusions reached in the prevailing opinion. The evidence in this case as I read the record does not justify the so-called finding that it is impossible to ascertain from the evidence what the value of the crop would have been had the seed sold to and planted by the plaintiff been Utah Chinese celery seed. The plaintiff offered evidence tending to show that about 36,000 plants

of celeriac were grown upon the two acres of land which were planted by the plaintiff, and that an equal number of Utah Chinese celery plants would have been grown had the seed which plaintiff purchased been true to name. The evidence also shows that the market value of Utah Chinese celery during the fall of 1928 was from 75 cents to $1 per dozen bunches. There is also evidence that one person can dig and market 75 dozen bunches of celery in a day and that the reasonable wages for such work is $3 per day. There is evidence that on the 13th of November, 1928, and for a few days thereafter, a severe frost occurred in Utah county and elsewhere in the state. Plaintiff offered evidence tending to show that the frost caused but little damage to celery which was being grown in the vicinity of the Hoover farm. The defendant offered evidence which tended to show that the frost practically destroyed the entire celery crop. There was thus upon that issue a direct conflict in the evidence, and the court was called upon to determine the fact and was in error in evading the issue by finding that "it is impossible to determine what, if any, profit would have been realized from the crop had the seed been celery seed." Neither the fact that there was a direct conflict in the evidence as to whether the plaintiff was or was not damaged, nor the fact that the amount of damages which plaintiff probably sustained by reason of the fact that the seed was celeriac instead of celery may not be ascertained with mathematical accuracy, justify a failure to find definitely upon that issue. If the plaintiff failed to establish that she sustained any damage by reason of the seed not being true to name, the court should have so found. If, on the other hand, the evidence offered by the plaintiff was believed by the trial court, there is ample evidence that the plaintiff was damaged by reason of the seed not being true to name, and such evidence is sufficiently definite to justify the fixing of the amount of damage sustained by the plaintiff. Moreover, even though it were impossible to ascertain the amount of damages which the plaintiff sustained by reason of the seed not being true to name, none the less she was

entitled to a judgment for nominal damages if the defendant warranted the seed to be Utah Chinese celery seed.

The prevailing opinion proceeds upon the theory that the trial court found that the defendant did not warrant the seed which was purchased by the plaintiff to be Utah Chinese celery seed and that such finding is supported by the evidence. The trial court did not find that the defendant did not warrant the seed purchased by the plaintiff to be Utah Chinese celery seed. If there is any finding upon that important issue, it is to the effect that the defendant expressly warranted the seed to be true to name. The fourth finding reads as follows:

"That the plaintiff took said seed to her farm in Vineyard, Utah County, State of Utah, wholly relying upon the representations of the defendant that said seed was Utah Chinese Celery seed. Said seed was not Utah Chinese Celery seed, but was Celeriac seed."

The trial court also found that at the time of the

"sale it was, and for a long time, had been the common and universal usage and custom of all persons engaged in the seed vending business at Salt Lake City, Utah, that the vendor of seeds does not by reason of such sale give or make any warranty, express or implied, as to the description, quality, productiveness, or any other matter, in respect to the seeds they sell, and the defendant sold said seeds pursuant to said general usage and custom."

The law is well settled that evidence of a usage or custom is not admissible to vary or contradict the express terms of a plain unambiguous contract. 17 C. J. 495, and cases there cited in the footnote. The authorities are also generally agreed that a usage or custom which is repugnant to the express provisions of a statute has no legal effect. 17 C. J. 475, and cases there cited. Our Uniform Sales Act, Comp. Laws Utah 1917, title 98, c. 1, provides:

Section 5121. "Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be considered as a warranty."

Section 5123. "Where there is a contract to sell or a sale of goods by description, there is an implied warranty that the goods shall correspond with the description and if the contract or sale be by sample, as well as by description, it is not sufficient that the bulk of the goods corresponds with the sample if the goods do not also correspond with the description."

Section 5124, subd. 1. "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

Thus, if the fact be as apparently found by the trial court that the defendant represented the seed in question to be Utah Chinese celery seed and the plaintiff relied upon such representation, then and in such case the defendant is not relieved from responding in damages because of any usage or custom that might have existed among persons engaged in selling seed.

The court also found upon conflicting evidence that the seed purchased by the plaintiff was delivered in a paper sack upon which were printed these words:

"Utah Nursery Company uses all possible care and precaution to send out only seeds that are pure and reliable but gives no warranty, express or implied, as to the description, quality or productiveness or any other matter of any seeds they sell. If the purchaser does not accept them on these terms, they must return them at once and any money paid by them will be refunded."

The fact that the seed was delivered in a paper sack upon which was printed the matter just quoted is not necessarily of controlling importance. If the fact be as apparently found by the trial court, that the defendant represented to the plaintiff that the seed was Utah Chinese celery seed, and the defendant relied upon such representations, then and in such case the printed matter would not change the legal effect of defendant's representations. One of the principal issues raised by the pleadings and evidence in this case is whether there was or was not an expressed or im-

plied warranty that the seed purchased by the plaintiff was Utah Chinese celery seed. In determining that issue, evidence of the usage and custom of persons engaged in the selling of seeds, of plaintiff's knowledge or ignorance of such usage or custom, of the printed matter, if any, which was upon the paper sack in which the seeds were delivered, together with the other facts and circumstances surrounding the transaction, were proper subjects of inquiry, but the ultimate fact which the court was called upon to determine was whether the seed in question was, or was not, warranted to be Utah Chinese celery seed. As I read the findings, that issue was determined in favor of the plaintiff by finding No. 4 which is heretofore quoted. The defendant makes no complaint of that finding, and, so long as such finding is permitted to stand, the plaintiff is entitled to at least nominal damages. In my opinion the judgment is not supported by the findings, and therefore the trial court was in error in entering judgment in favor of the defendant. The judgment should be reversed, and the cause remanded to the district court of Salt Lake county, with directions to grant a new trial.

CHERRY, C. J., being disqualified, did not participate herein.