## McHutchinson & Co. v. Snow

694

*Howard L. Fussell*, for plaintiff.

*Geary & Rankin*, for defendant.

MacDade, J., May 22, 1936.—On April 27, 1931, defendant ordered in writing 5,000 Calla Aethiopica bulbs from plaintiff at $45 a thousand. Later by letter defendant ordered 2,500 more of the same bulbs of larger size. The price of these was $130 per thousand. These bulbs were shipped by express to Morton, Pa., the address of defendant, on August 3, 1931, and were received. Defendant paid on account of the bulbs, over a period of 10 months, the sum of $485, leaving a balance of $200 with interest. Defendant refused to pay this balance, alleging that the bulbs were diseased and as a consequence he suffered a loss when he should have normally expected to have made a profit. Defendant also produced a counterclaim in the sum of $2,825. At the trial of the case, the court held that defendant did not introduce sufficient evidence to support his counterclaim, but left to the jury the question whether the bulbs were diseased when received by defendant and, if so, whether defendant should pay the remaining $200 with interest. The jury found for defendant.

Plaintiff then moved for a new trial and for judgment n. o. v. The reasons assigned for a new trial are pro forma, but we assume from plaintiff's argument at bar that this motion is not being pressed so much as the motion for judgment n. o. v., based upon the following clause in the original order:

"The buyer and seller agrees that the seller gives no warranty, express or implied, as to the productiveness of the stock hereby offered, and its retention for ten days

after receipt by the buyer without complaint in writing, constitutes a definite acceptance thereof by the buyer. All growing stock is offered subject to Crop."

Plaintiff argues that a proper interpretation of the language thus employed was solely for the court and would exonerate plaintiff from any liability if the bulbs were in part diseased; hence binding instructions for plaintiff should have been given. At the trial the trial judge was of the opinion that the case should, under all the circumstances, be submitted to a jury. Plaintiff complains, therefore, that we should have affirmed its points of law, namely, the first and third points.

The first point was:

"1. There is no warranty implied in the sale of bulbs. If you find that plaintiff supplied to defendant bulbs that were true to name, that is, were Aethiopica Calla bulbs, your verdict must be for plaintiff."

If we had affirmed this point we would have been compelled necessarily in logical sequence to affirm the third point, for binding instructions. Should the trial judge have directed a verdict in favor of plaintiff for the balance alleged to be due by defendant?

The above citation from the written order does not refer to the question of disease or nondisease of the bulbs sold. Really at the trial plaintiff's witnesses admitted tacitly that this question had not occurred to them at the times of the sales of these bulbs. For instance, a witness by the name of Mitchell, who qualified as an expert on bulbs, plants, etc., fairly admitted that the bulbs should have been examined to detect disease. Such was not in fact done. A cursory examination only was made, as explained by him, and he did this "Because the expert in California may have failed to detect the disease, but it is not likely that both of us would have failed to make the discovery."

Inasmuch as defendant's difficulty in ascertaining the cause of the non-growth or germination of the bulbs extended over a period of 10 days, a period allotted to com-

plain in writing or a definite acceptance would be assumed, defendant should have cut open the bottom of each bulb to ascertain if the disease existed. Was not this time limit of 10 days a direct contradiction of plaintiff's claim that no warranty, express or implied, was intended as to the productiveness of the stock offered? Surely, in any event, to cut all bulbs, as suggested, is a reductio ad absurdum, and the sensible thing was to await the germination of the bulbs to ascertain the crop, if such there would be and if disease did not prevent. It would seem to us that defendant was entitled to a credit for any loss arising from diseased bulbs; at least it was a question for the jury to solve.

We are cited several cases by plaintiff to convince us that we should have given binding instructions. A reading of them, such as Lumbrazo v. Woodruff et al., 256 N. Y. 92, 175 N. E. 525, Hoover v. Utah Nursery Co., 79 Utah 12, 7 P. (2d) 270, William A. Davis Co. v. Bertrand Seed Co., 94 Cal. App. 281, 271 Pac. 123, has not so convinced us that the trial judge erred in the instant case, because the facts are dissimilar.

We prefer to accept as controlling the legal situation the principles enunciated in 24 R. C. L. 199, sec. 470:

"The better view, however, seems to be that in the sale of seed necessarily intended for planting and which is totally unfit for seed if not fertile, a warranty will ordinarily be implied that it is fit for such purpose, that is, that it is reasonably fertile seed and will germinate if properly planted, and that it is reasonably free from impurities and noxious weed seeds; and affirmations by the seller that seed sold is good seed or the like may, like other affirmations as to quality or the like, constitute what are generally classified as express warranties. Spring and winter wheat cannot ordinarily be determined by inspection, and ordinarily winter wheat is not fit for spring planting, and the question has frequently arisen as to the liability of the seller where seed winter wheat is sold by

mistake for spring wheat and results in the buyer's loss of his crop. If the seller has knowledge that the wheat sold by him as spring wheat is in fact winter wheat he could undoubtedly be held liable on the ground of fraud. According to the better view where the buyer states that he wants spring seed wheat or seed wheat for spring planting, there is an implied warranty that the wheat sold is fit for the purpose for which it is intended, that is, that the wheat sold is spring wheat."

In the same volume, in section 471, page 200, treating of the sale of nursery stock, the class in which bulbs can safely be placed, this ruling is cited:

"The general rule seems to be that, on a sale of nursery stock, such as fruit trees for planting, there is an implied warranty that the trees are reasonably fit for the purpose for which they are purchased; that they are true to name and will germinate and grow. In other words, they are warranted to be free from defects arising from negligent cultivation or handling. Thus where the evidence showed that the buyer made known to the seller the character of trees desired and the purpose for which they were intended, that the seller claimed to have such trees, and, on the buyer's order, sent to him the trees in question, it was held that there was an implied warranty that the trees had not been so far maltreated as to prevent them from growing. Under the general rule as to the effect of affirmations as to quality or condition, affirmations as to the quality or condition of nursery stock sold may constitute express warranties. So under the general rule as to warranties in case of sales by description, if nursery stock, such as fruit trees, are sold as and for a particular variety this may constitute a warranty as to variety. And it is held that a nurseryman, accepting an order for fruit trees ordered by name, who assumes to fill the order by trees in part purchased from other dealers, assumes the risk that the trees may not be true to name and of the quality prescribed."

In Samuel et al. v. Delaware River Steel Co., 264 Pa. 190, a case arising in our court, and in which our court was affirmed and the Superior Court reversed, the Supreme Court said, beginning at the bottom of page 192:

"The question raised in this record is whether the implied warranty, that the material was of the kind ordered, was also one which survived the acceptance and use of the material by defendant, without previous notice to plaintiffs. This question is one concerning which we find considerable conflict of judicial opinion in the different jurisdictions. The weight of authority in other jurisdictions, however, seems to be that the implied warranty, like the express, survives acceptance even though the defects were known at the time the commodity was accepted and used. See cases cited in Note 35 L. R. A., N. S. 501, 507. This rule has been adopted in Pennsylvania in the cases above cited and the law as there stated was properly applied by the Superior Court in disposing of the appeal."

In Joseph, etc., v. Richardson, etc., 2 Pa. Superior Ct. 208, 216, the court said, after having cited numerous cases on the question of warranty of chattels sold:

"All of the authorities agree that there is an implied warranty that the article delivered shall correspond in specie with the commodity sold, unless there are facts and circumstances to show that the purchaser took upon himself the task of determining not only the quality of the article but the kind he purchased."

Certainly the foregoing would cover an implied warranty that bulbs sold to produce a special crop would be of the quality contracted for and free from disease. The above proposition of law fully sustains us in refusing to affirm plaintiff's first point of law. And we believe we are further supported in our determination not to give binding instructions at the trial, and now to enter judgment in favor of the plaintiff n. o. v., by the following citations:

In Frith & Co. v. Hollan, 133 Ala. 583, 91 Am. St. R. 54, it is ruled:

"On a sale of onion sets to a merchant by description, there is an implied warranty that they shall answer the description and be merchantable."

In Butler v. Moore, Executrix, 68 Ga. 780, the question was not as to the warranty of the quality of the seeds but only the measure of damages. The measure of damages, in view of the verdict in this case, does not enter into the question. However, the court did consider the question of warranty, stating:

"In this suit no fraud was alleged nor any knowledge on the part of the seller that the seed were bad. It is merely a suit on the warranty of the merchantable quality of the goods, which the law imposes, or on the express warranty of the fitness of the seed for planting, as alleged by the plaintiff, and in such a suit we are constrained to hold, in conformity with the repeated rulings of this court, as referred to, that if the seed were worthless, the measure of damages would be the purchase money with interest and any expenses incurred in complying with the contract after the same was entered into, such as the hauling of the seed, preparing the lands for planting, sowing and rolling said seed, and such other necessary expense incurred after the entering into said contract."

From the above authorities we conclude that the law applied to the facts as developed at the trial was the correct law, and that the trial judge did not err in refusing binding instructions for plaintiff. As was held at the trial, we now hold the law to be:

"On a sale of seeds for planting, where the vendee relies upon the representations of the vendor and has no opportunity of inspection, there is an implied warranty that the seeds are reasonably fit for the purpose for which they are purchased. The law raises a warranty that they are true to name and answer the description under which the vendor sells them, that they are reasonably free from impurities and foreign seeds, and that they will germinate. In other words, they are warranted free from any

defects arising from improper or negligent cultivation and handling": Gold Ridge Mining Co. v. Tallmadge, 44 Ore. 34, 102 Am. St. R. 602, 623.

In view of the above, we make the following

### *Order*

And now, May 22, 1936, motions of plaintiff for a new trial and for judgment non obstante veredicto, coming on to be heard by the court en banc, together with oral arguments and briefs, after due consideration thereof, the court doth order and direct that the—

1. Motion of plaintiff for a new trial be and is hereby dismissed; and

2. Motion of plaintiff for judgment in its favor notwithstanding the verdict for defendant be and is hereby discharged sec. reg. et sec. leg;

3. Prothonotary be and is hereby ordered and directed to enter judgment in favor of the defendant and against the plaintiff upon the verdict.